**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KUANTAU REEDER**                                           **CIVIL ACTION**

**VERSUS**                                                         **NO. 13-6493**

**N. BURL CAIN, WARDEN**                              **SECTION: "G"(4)**

## ORDER AND REASONS

Before the Court are Petitioner Kuantau Reeder's ("Petitioner") objections[1] and supplemental objections[2] to the Report and Recommendation of the United States Magistrate Judge assigned to the case.[3] Petitioner, a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that the state withheld information regarding a witness's prior federal conviction in violation of *Brady v. Maryland* and failed to correct the witness's testimony regarding his prior criminal history in violation of *Napue v. Illinois*.[4] The Magistrate Judge recommended that the complaint be dismissed as time-barred.[5] Petitioner objects, arguing *inter alia* that the Magistrate Judge erred in finding that his counsel did not act with due diligence in failing to discover the suppressed evidence before 2009.[6] After reviewing the petition, the Magistrate Judge's Report and Recommendation, Petitioner's objections, the record, and the applicable law, the Court will adopt

---

[1] Rec. Doc. 22.

[2] Rec. Doc. 26.

[3] Rec. Doc. 17.

[4] Rec. Doc. 1 at 8.

[5] Rec. Doc. 55.

[6] Rec. Doc. 29.

the Report and Recommendation to the extent it recommends dismissal of Petitioner's *Napue* claim

as untimely, sustain Petitioner's objection regarding the timeliness of his *Brady* claim, and dismiss

the *Brady* claim with prejudice on the merits.

## I. Background

### A.    *Procedural Background*

On October 7, 1993, Petitioner was indicted by a Grand Jury in Orleans Parish for the

second degree murder of Mark Broxton ("Broxton").[7] His first trial ended in a mistrial on July 8,

1994, when the jury could not reach a verdict.[8] On July 11, 1995, a second trial began before

another jury in Orleans Parish Criminal District Court.[9] On July 13, 1995, the jury found Petitioner

guilty of second degree murder.[10] On July 19, 1995, the trial court sentenced Petitioner to a term

of life imprisonment without the benefit of probation, parole, or suspension of sentence.[11] On July

16, 1997, the Louisiana Fourth Circuit Court of Appeal affirmed Petitioner's conviction and

sentence.[12] Petitioner's conviction became final 30 days later because he did not seek review in

the Louisiana Supreme Court.[13]

---

[7] State Rec., Vol. I of XIII, Indictment.

[8] State Rec., Vol. I of XIII, Trial Minutes, July 8, 1994.

[9] State Rec., Vol. VIII of XIII, Trial Minutes, July 11, 1995.

[10] State Rec., Vol. VIII of XIII, Trial Minutes, July 13, 1995.

[11] State Rec., Vol. I of XIII, Minute Entry, July 19, 1995.

[12] *State v. Reeder*, 698 So.2d 56 (La. App. 4 Cir. 1997); State Rec., Vol. VIII of XIII.

[13] *See State v. Butler*, 533 F.3d 314 (5th Cir. 2008).

On March 28, 2000, Petitioner filed a post-conviction relief motion in the state trial court.[14] The state trial court denied the motion on June 18, 2003.[15] The Louisiana Fourth Circuit Court of Appeal denied Petitioner's related writ application on September 23, 2003.[16] On September 3, 2004, the Louisiana Supreme Court also denied Petitioner's subsequent writ application without stated reasons.[17]

Over five years later, on December 13, 2009, Petitioner through retained counsel filed another application for post-conviction relief in the state trial court arguing that the prosecution withheld impeachment evidence regarding the criminal history of a witness, Earl Price ("Price"), and failed to take corrective measures when Price perjured himself during trial.[18] Specifically, Petitioner asserted that prior to his first trial he filed a motion requesting disclosure of the criminal rap sheets of the State's witnesses, and the State disclosed that Price had prior convictions for assault and battery in 1968, armed robbery in 1975, felon with a firearm in 1977 and burglary in 1982.[19] Petitioner argued that the State failed to disclose that Price had federal convictions for lying on a federal gun application and for possession of a firearm by a convicted felon, and the State failed to correct Price's testimony at trial that he only had one prior conviction for aggravated assault and battery.[20]

---

[14] State Rec., Vol. IV of XIII, Uniform Application for Post-Conviction Relief, Mar. 28, 2000.

[15] State Rec., Vol. VIII of XIII, Hearing Transcript, June 18, 2003.

[16] *State v. Reeder*, 2003-K-1342 (La. App. 4 Cir. 9/23/03), 698 So.2d 56; State Rec., Vol. IV of XIII.

[17] *State v. Reeder*, 2003-KP-2854 (La. 9/3/04); State Rec., Vol. IV of XIII.

[18] State Rec., Vol. XII of XIII, Application for Post-Conviction Relief, Dec. 13, 2009.

[19] *Id.* at 7.

[20] *Id.*

On August 27, 2010, the state trial court denied relief, finding that the claims were procedurally barred as untimely under state law.[21] The Louisiana Fourth Circuit granted Petitioner's related writ application, finding that the trial court erred in denying the application as untimely without considering the new evidence exception,[22] and remanded the matter to the trial court for further proceedings.[23]

On remand, the trial court denied relief because it determined that Petitioner had failed to establish that the State withheld evidence or that the undisclosed evidence would have changed the verdict.[24] The trial court also found that the State did not suborn perjury when it failed to correct Price's testimony about his prior criminal record.[25] The Louisiana Fourth Circuit denied Petitioner's related writ application, finding that the defense was on notice of at least one of Price's federal convictions prior to the first trial.[26] The Fourth Circuit determined that the omission of Price's other convictions did not "render the jury's verdict suspect."[27] Finally, the Fourth Circuit determined that the State's failure to correct Price's testimony regarding his other convictions was not subornation of perjury because defense counsel also knew about the other convictions and

---

[21] State Rec., Vol. XII of XIII, Hearing Transcript, Aug. 27, 2010.

[22] *State v. Reeder*, 2010-K-1369 (La. App. 4 Cir. 12/2/10); State Rec., Vol. XII of XIII.

[23] *State v. Reeder*, 2010-K-1369 (La. App. 4 Cir. 1/12/11); State Rec., Vol. XII of XIII.

[24] State Rec., Vol. XIII of XIII, Hearing Transcript, Feb. 9, 2012.

[25] *Id.*

[26] *State v. Reeder*, 2012-K-0529 (La. App. 4 Cir. 5/17/12); State Rec., Vol. XIII of XIII.

[27] *Id.*

chose not to impeach Price.[28] On January 18, 2013, the Louisiana Supreme Court denied relief without stated reasons.[29]

On November 22, 2013, Petitioner subsequently filed the instant petition for federal habeas corpus relief asserting the following grounds for relief: (1) the State withheld information about Price's prior federal convictions for lying on a gun application and possession of a firearm by a convicted felon in violation of *Brady v. Maryland*; and (2) the State failed to correct Price's testimony on cross-examination by the defense regarding his prior criminal history in violation of *Napue v. Illinois*.[30] The State filed a response arguing that the petition is untimely, or alternatively, that the claims are without merit.[31]

**B.      Factual Background**

The shooting of Mark Broxton occurred on the evening of April 13, 1993, outside of Julian's Food Store.[32] When officers arrived at the scene, they found Broxton, who was still conscious, lying on the floor of the store.[33] An expert in the field of forensic pathology testified that an autopsy revealed four gunshot wounds to Broxton's right side, two of which were lethal.[34]

---

[28] *Id.*

[29] *State v. Reeder*, 2012-KP-1399 (La. 1/18/13), 107 So.3d 623; State Rec., Vol. XIII of XIII.

[30] Rec. Doc. 1.

[31] Rec. Doc. 16.

[32] *State v. Reeder*, 698 So.2d 56 (La. App. 4 Cir. 1997); State Rec., Vol. VIII of XIII.

[33] State Rec., Vol. IX of XIII, July 1995 Trial Transcript at 80.

[34] *Id.* at 14.

The expert testified that Broxton may have been able to move following the shooting, but likely would not have been able to move very far.[35]

During Petitioner's second trial, an officer testified that Broxton first stated that he did not know who shot him, and he subsequently stated he would "take care [of the matter] himself."[36] Officers investigating the shooting learned Earl Price and Norma Varist were witnesses to the shooting.[37] Sergeant Westley Morris testified that both Price and Varist identified Petitioner as the shooter.[38] Broxton's mother, Mary Menina, testified that she spoke with Norma Varist about the shooting, and based on the information Varist provided Menina believed that Petitioner killed Broxton.[39] Menina also stated that Varist was afraid to testify at trial.[40] Officers also received information that Berjerack Johnson was involved in the shooting, but neither Price nor Varist identified Johnson as the shooter.[41] A third witness, Ella Fletcher, told the police that the shooter was wearing a blue and black jacket, but could not identify the suspect.[42] A jacket similar to that description was found near the scene that day.[43]

---

[35] *Id.* at 18–19.

[36] *Id.* at 80.

[37] *Id.* at 51.

[38] *Id.*

[39] *Id.* at 8.

[40] *Id.* at 10.

[41] *Id.* at 51.

[42] *Id.* at 28, 74–75.

[43] *Id.* at 28, 75.

During Petitioner's second trial, Earl Price testified he often visited the food store where the shooting occurred.[44] Price testified that on the evening of the shooting, he was parked across the street from the store, helping someone jump-start his car.[45] While he was waiting for the car battery to charge, Price testified that he noticed Broxton talking on a telephone outside the store.[46] Price testified that a black Camaro with chrome wheels pulled up next to Broxton.[47] Price stated that the passenger of the car, whom he identified as Petitioner, got out of the car and approached Broxton.[48] According to Price's testimony, Petitioner was wearing a blue and red windbreaker.[49] Price testified that Petitioner and Broxton began to argue, and Petitioner pulled out a gun.[50] Price testified that Broxton put his hands in the air, and Petitioner shot him twice.[51] According to Price's testimony, Broxton tried to run inside the store, and Petitioner shot him one more time.[52] Price testified that Petitioner fired three additional shots that hit a car parked outside the store.[53] Price stated that Broxton then went into the store to get a drink.[54] Price testified that Broxton walked up

---

[44] *Id.* at 90.

[45] *Id.* at 91.

[46] *Id.* at 91–92.

[47] *Id.* at 92.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at 92–93.

[52] *Id.* at 93.

[53] *Id.*

[54] *Id.*

to the counter with a drink and collapsed.[55] Price testified that when the police arrived he walked out of the store, and he observed Petitioner as he walked away and discarded his jacket in a dumpster.[56]

On cross examination, Price admitted having a prior conviction in Mississippi for assault and battery with the intent to kill involving a shotgun, but he denied having any other criminal history.[57] Price admitted that on the day of the shooting he did not tell the police that Petitioner arrived at the scene in a car.[58] Price also admitted that during the first trial he testified that he could not remember how the assailant arrived at the scene.[59]

Norma Varist was called to the stand, but she refused to testify and was held in contempt.[60] An officer who arrested Petitioner testified that Varist told him she did not want to testify against Petitioner because of unspecified incidents that occurred between Varist's family and Petitioner's family.[61]

The defense presented a recording of the testimony of Osama Kadeem Ali, a cashier at Julian's Food Store, from the earlier trial.[62] Ali testified that Petitioner came into the store often.[63]

---

[55] *Id.*

[56] *Id.* at 93–94.

[57] *Id.* at 100.

[58] *Id.* at 107–09, 112–13.

[59] *Id.* at 113–14.

[60] *Id.* at 144–48.

[61] *Id.* at 155–59.

[62] *Id.* at 164.

[63] State Rec., Vol. IX of XIII, July 1994 Trial Transcript at 129–30.

He also testified that Price often went to the store to buy beer.[64] Ali testified that on April 13, 1993, he was working in the store when he heard shots coming from outside.[65] Ali testified that Broxton came into the store and threw himself onto the counter.[66] According to Ali, Broxton then collapsed onto the floor.[67] Ali testified Broxton "could barely walk," and Broxton did not walk to the cooler to get a drink prior to collapsing.[68] Ali testified that the other cashier locked the door to the store after Broxton entered.[69] Ali did not recall seeing Price in the store, but Ali testified that if Price were there he must have come inside before the victim entered.[70]

The defense also presented the testimony of Kirshon Smith.[71] Smith testified she had been dating Broxton prior to his death.[72] She testified Berjerack Johnson was the father of her child.[73] Smith testified that Broxton was visiting her when Johnson called her from jail.[74] She testified that Johnson heard Broxton's voice in the background and told her he would make Broxton "pay."[75] Smith could not recall when Johnson was released from jail, but Johnson called her the night

---

[64] *Id.* at 131.

[65] *Id.*

[66] *Id.* at 132.

[67] *Id.*

[68] *Id.*

[69] *Id.* at 136.

[70] *Id.* at 138.

[71] *Id.* at 223.

[72] *Id.*

[73] *Id.*

[74] *Id.* at 225.

[75] *Id.*

Broxton was shot to tell her of the shooting.[76] Smith also admitted to hearing rumors that Petitioner shot Broxton because of an "altercation" they had on Easter.[77]

Finally, the defense presented three alibi witnesses. Shannon Mitchell testified that he saw Petitioner at approximately 1:00 p.m. or 2:00 p.m. on April 13, 1993.[78] Mitchell testified that later that day he witnessed Broxton in an argument with another man.[79] According to Mitchell, Petitioner was with a group of men, and they asked Mitchell to join them in a game of basketball.[80] Mitchell stated that Petitioner was wearing shorts and a t-shirt, and did not have a jacket.[81] Mitchell testified that a few hours later he heard gunshots coming from the food store, and he went to the food store to see what had occurred.[82] Mitchell stated that he did not see Price's van parked near the store.[83] Mitchell admitted that he and Petitioner were friends.[84]

Katiti Douglas testified that she saw Petitioner on the basketball court at the time of the shooting.[85] Douglas admitted that her husband and Petitioner were friends.[86] Shirley Reeder,

---

[76] *Id.* at 226.

[77] *Id.* at 227.

[78] State Rec., Vol. IX of XIII, July 1995 Trial Transcript at 167–69, 177.

[79] *Id.* at 168, 176. On cross examination, Mitchell admitted that he never told the police about the argument between Broxton and the other man. *Id.* at 192.

[80] *Id.* at 169.

[81] *Id.*

[82] *Id.* at 169, 180.

[83] *Id.* at 170, 182.

[84] *Id.* at 170. On cross examination, Mitchell admitted that he was in jail at the time of trial for possession of cocaine, and he had prior convictions for distribution of cocaine, possession with the intent to distribute cocaine, and possession of marijuana. *Id.* at 171–174.

[85] *Id.* at 231.

[86] *Id.* at 242.

Petitioner's mother, testified that Petitioner had dinner with her on the day of the shooting, but she could not recall the time.[87] She testified that he was wearing a red, long-sleeved shirt and shorts.[88]

The State called Ivan Williams as a rebuttal witness.[89] Williams testified that he purchased a newspaper from Julian's Food Store after Broxton had been shot.[90] According to Williams, the door to the store was not locked,[91] contradicting Ali's testimony that a cashier locked the door after Broxton entered the store.

## C.    *Report and Recommendation Findings*

The Magistrate Judge recommends that the petition be dismissed with prejudice as time-barred.[92] The Magistrate Judge noted that 28 U.S.C. § 2244(d)(1)(D) provides that an application must be filed one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[93] The Magistrate found that Petitioner had not established that he exercised due diligence in discovering the additional information about Price.[94] The Magistrate noted that the state record showed that Petitioner's post-conviction counsel accidently discovered the existence of Price's falsified gun application conviction in October 2009 when searching for other information about Price's

---

[87] *Id.* at 246.

[88] *Id.* at 247.

[89] *Id.* at 250.

[90] *Id.*

[91] *Id.* at 251.

[92] Rec. Doc. 17 at 16.

[93] *Id.* at 8.

[94] *Id.*

criminal history in Mississippi.[95] The Magistrate determined that Petitioner had failed to reference or present any evidence of diligence in discovering the basis for his claims.[96] The Magistrate found that the State was correct in its assertion that the evidence of Price's prior federal conviction for falsifying a gun application could have been discovered many years earlier with the exercise of any reasonable effort.[97]

Addressing Petitioner's claim that the State suborned perjury when it did not correct Price's testimony that he did not have any criminal convictions other than battery with a shotgun, the Magistrate noted that the State disclosed some of Price's convictions to the defense prior to the first trial.[98] Accordingly, the Magistrate found that this claim was untimely because the prosecutor's failure to correct that testimony was known at the time of trial and was discoverable from a reading of the trial transcript.[99]

Turning to Petitioner's claim that the State failed to disclose Price's federal conviction for falsifying a gun application, the Magistrate noted that Petitioner failed to establish that Price's federal criminal history was in the district attorney's file.[100] Assuming that the evidence of the undisclosed convictions was in the district attorney's file, the Magistrate found that the file became discoverable as early as 1997 when Petitioner's conviction became final.[101] Moreover, assuming

---

[95] *Id.*

[96] *Id.* at 9.

[97] *Id.* at 9–10.

[98] *Id.* at 11.

[99] *Id.*

[100] *Id.* at 12.

[101] *Id.*

that evidence of the undisclosed evidence was not in the district attorney's file, the Magistrate determined that the evidence was discoverable by correspondence with the state and federal courts in Mississippi.[102] Accordingly, the Magistrate Judge found that the factual basis for both of Petitioner's claims could have been discovered earlier with the exercise of due diligence.[103] Because Petitioner had not established that he acted with due diligence in discovering the basis for these claims, the Magistrate determined that Petitioner had not established that the limitations provision found at 28 U.S.C. § 2244(d)(1)(D) should apply to his claims.[104]

The Magistrate found that the federal habeas petition must have been filed on or before August 17, 1998, one year after Petitioner's conviction became final to be considered timely under 28 U.S.C. § 2244(d)(1)(A).[105] Because no state post-conviction relief applications were pending between August 16, 1997 and August 17, 1998, the Magistrate determined that Petitioner was not entitled to statutory tolling.[106] The Magistrate also determined that Petitioner was not entitled to equitable tolling because the record reflected that Petitioner made no diligent effort to pursue federal habeas review in a timely manner.[107]

---

[102] *Id.*

[103] *Id.* at 13.

[104] *Id.*

[105] *Id.*

[106] *Id.* at 14.

[107] *Id.* at 16.

## II. Objections

### A.    *Petitioner's Objections*

Petitioner objects to the Magistrate Judge's Report and Recommendation.[108] Petitioner asserts that he acted diligently under the circumstances.[109] Petitioner notes that at the October 28, 2011 hearing in the state trial court, the District Attorney's Office acknowledged that it failed to inform trial counsel that Earl Price had a federal conviction from the Southern District of Mississippi for lying on a federal gun application.[110] Petitioner asserts that Louisiana has a longstanding legal tradition of requiring that the State provide defense counsel with the criminal history of witnesses.[111] Therefore, Petitioner argues that it is clear that the State committed a *Brady* violation and violated Louisiana law when it withheld the impeachment evidence.[112]

Petitioner argues that the Magistrate erred in finding that Petitioner and his prior counsel did not act with due diligence because they did not discover the suppressed evidence before 2009.[113] Petitioner asserts that the withheld conviction could only have been discovered through action that was unrealistic and far exceeded the standard for objective due diligence.[114] Petitioner contends that prior to his first trial his trial counsel filed a motion for discovery requesting that the

---

[108] Rec. Doc. 22 at 1.

[109] *Id.* at 3.

[110] *Id.* at 9.

[111] *Id.*

[112] *Id.* at 10.

[113] *Id.*

[114] *Id.*

State turn over the criminal records of all witnesses.[115] Petitioner argues that the State's response

listed Price's criminal convictions as: (1) an assault and battery conviction in 1968; (2) an armed

robbery conviction in 1975; (3) a felon with a firearm conviction in 1977; and (4) a burglary

conviction in 1982.[116] He asserts that prior to his second trial his counsel filed another motion for

discovery, and in response the State produced Price's NOPD rap sheet.[117] Petitioner contends that

neither discovery response listed Price's 1973 conviction in the Southern District of Mississippi

for lying on a firearm application and the companion conviction for possession of a firearm by a

felon.[118]

Petitioner cites *Starns v. Andrews*, where the Fifth Circuit held that the petitioner satisfied

due diligence even though he failed to investigate one of the State's witnesses beyond what was

told to him by the prosecutors.[119] He also relies on *Douglas v. Workman*, where the Tenth Circuit

found that due diligence was satisfied even though the petitioner failed to discover the existence

of a deal between the prosecution and a witness.[120] Petitioner contends that he satisfied the due

diligence requirement by filing pre-trial motions requesting exculpatory evidence, and he had the

right to assume that the State's disclosure was truthful and reliable.[121] Petitioner asserts that,

contrary to the Magistrate's finding, only the State had access to the law enforcement records of

---

[115] *Id.* at 11.

[116] *Id.* at 11–12.

[117] *Id.* at 12.

[118] *Id.*

[119] *Id.* at 13 (citing 524 F.3d 612, 618 (5th Cir. 2008)).

[120] *Id.* (citing 560 F.3d 1156 (10th Cir. 2009)).

[121] *Id.* at 14.

Price's prior conviction.[122] Petitioner argues that performing a search of the records as contemplated by the Magistrate would have required him to contact every state criminal records custodian and the clerk of every federal district court.[123] Petitioner contends that only reasonable diligence, not "maximum feasible diligence," is required, and here such a standard was met.[124]

Finally, Petitioner contends that his counsel only discovered Price's prior conviction because it was listed as a predicate offense for sentencing Price in a case that occurred years after Petitioner's trial.[125] Therefore, Petitioner argues that the Magistrate erred in finding that his prior counsel could have discovered the suppressed evidence in this manner.[126]

**B.    *Petitioner's Supplemental Objections***

With leave of Court, Petitioner filed supplemental objections to the Magistrate Judge's Report and Recommendation.[127] Petitioner argues that the cases relied upon by the Magistrate in finding a lack of due diligence are distinguishable from the factual circumstances in the instant case.[128] Petitioner contends that his case is distinguishable from *Manning v. Epps*,[129] *Owens v. Boyd*,[130] and *Aron v. United States*[131] because Petitioner has not alleged ineffective assistance of

---

[122] *Id.*

[123] *Id.* at 15.

[124] *Id.* (citing *Holland v. Florida*, 130 S.Ct. 2549, 2565 (2010)).

[125] *Id.*

[126] *Id.*

[127] Rec. Doc. 26.

[128] *Id.* at 1.

[129]  688 F.3d 177 (5th Cir. 2012).

[130] 235 F.3d 356 (7th Cir. 2000).

[131] 291 F.3d 708 (11th Cir. 2002).

counsel based on his attorney's acceptance of the prosecutor's response to his discovery request.[132]

Petitioner also argues that his case is distinguishable from *Johnson v. Dretke*[133] and *Williams v. Taylor*[134] because he made at least two separate requests for the criminal record of Price, and he had no independent way to access the requested information.[135] Petitioner contends that the Fifth Circuit's holding in *Starns v. Andrews* supports a finding that he acted with due diligence because there the Fifth Circuit "reasoned that the petitioner was entitled to assume that the State could be taken at its word that the witness's potential testimony would not be important at trial."[136] Petitioner asserts that he was entitled to assume that the State provided him with Price's complete criminal history.[137]

   Finally, Petitioner objects to the Magistrate Judge's finding that he is not entitled to equitable tolling.[138] Petitioner notes that the Fifth Circuit has found that the doctrine of equitable tolling may apply to a petitioner whose attorney actively lied about the timely filing of a post-conviction relief motion.[139] Petitioner contends that "the deception by the prosecutor when the prosecutor's untruthful response to a defendant/petitioner's written request for the complete

---

[132] Rec. Doc. 26 at 2–3.

[133] 442 F.3d 901 (5th Cir. 2006).

[134] 529 U.S. 420 (2000).

[135] Rec. Doc. 26 at 5.

[136] *Id.* at 6 (citing 524 F.3d 612 (5th Cir. 2008)).

[137] *Id.*

[138] *Id.* at 7.

[139] *Id.* at 7–8 (citing *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002)).

conviction record of the State's star witness was the reason that the defendant did not file his habeas petition within the one year time period created by AEDPA."[140]

## C.    *Supplement to the Petition*

On July 25, 2016, with leave of Court, Petitioner filed a supplement to his habeas corpus petition.[141] Petitioner cites *Wearry v. Cain*, a recent Supreme Court decision, holding that the state's failure to disclose impeachment information concerning two state witnesses violated the defendant's due process rights.[142] As in *Wearry*, Petitioner argues that here the State withheld information about the credibility of its star witness.[143] Petitioner also argues that his case is similar to *Wearry* because an alibi defense was presented in both cases, and there was lack of scientific or physical evidence linking the defendants to the crimes.[144] Accordingly, Petitioner argues that "the State failed to turn over evidence, when viewed cumulatively with the alibi evidence presented in the case and the lack of any scientific or physical evidence presented against [Petitioner], is sufficient to call into question the validity of the verdict."[145]

## D.    *State's Opposition*

The State of Louisiana did not file a brief in opposition to Petitioner's objections or supplemental petition despite receiving electronic notice of the filing.

---

[140] *Id.* at 8.

[141] Rec. Doc. 35.

[142] *Id.* at 2–3 (citing 136 S. Ct. 1002 (2016)).

[143] *Id.* at 3.

[144] *Id.* at 3–4.

[145] *Id.* at 5.

### III. Standard of Review

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation.  A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[146]  A district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[147]  A district court's review is limited to plain error of parts of the report which are not properly objected to.[148]

### IV. Law and Analysis

*A.      AEDPA Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for the filing of habeas corpus applications, which shall run from the latest of:

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[146] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[147] Fed. R. Civ. P. 72(b)(3).

[148] *See Douglas v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996)(en banc), *superseded by statute on other ground*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[149]

The Magistrate found that the petition is untimely under Subsection A because Petitioner's conviction became final on August 15, 1997, more than 15 years before the federal habeas petition was filed.[150] Petitioner does not object to this determination. Reviewing for plain error, and finding none, the Court adopts the Magistrate's determination that the petition is untimely under Subsection A.

The Magistrate also addressed the applicability of Subsection D. As for Petitioner's claim that the State suborned perjury when it did not correct Price's testimony regarding his criminal convictions, the Magistrate found that this claim is untimely under Subsection D because the factual predicate for this claim was known at trial.[151] Petitioner does not object to this determination. The parties do not dispute that the State disclosed some of Price's convictions to the defense prior to Petitioner's first trial. Therefore, the prosecutor's failure to correct Price's testimony regarding his criminal convictions was known at the time of trial and was discoverable from a reading of the trial transcript. Accordingly, the Court adopts the Magistrate Judge's finding that Petitioner's claim that the State suborned perjury is untimely under Subsection D because the factual predicate for this claim was known at trial.

The Magistrate also found that Petitioner's *Brady* claim is untimely under Subsection D because the factual predicate for this claim could have been discovered earlier with the exercise of

---

[149] 28 U.S.C. § 2244(d)(1).

[150] Rec. Doc. 17 at 13–16.

[151] *Id.* at 11.

due diligence.[152] The Magistrate found that Petitioner failed to establish that Price's federal criminal history was in the district attorney's file.[153] Assuming that evidence of the undisclosed convictions was in the district attorney's file, the Magistrate found that the file became discoverable as early as 1997 when Petitioner's conviction became final.[154] Assuming that evidence of the undisclosed convictions was not in the district attorney's file, the Magistrate determined that the evidence was discoverable by correspondence with the state and federal courts in Mississippi.[155] Petitioner objects to this determination, arguing that the withheld conviction could only have been discovered through action that was unrealistic and far exceeded the standard for objective due diligence.[156]

Petitioner relies on the Fifth Circuit's decision in *Starns v. Andrews* to support this assertion.[157] There, a witness was deposed in a civil wrongful death suit following the petitioner's criminal conviction.[158] During the deposition the witness provided exculpatory evidence that was unknown to the defense.[159] The district court found that the petitioner learned of the factual predicate for his claims on the date of the deposition.[160] On appeal, the State argued that the petitioner could have learned of the factual predicate for his claim during trial because the State

---

[152] *Id.* at 13.

[153] *Id.* at 12.

[154] *Id.*

[155] *Id.*

[156] Rec. Doc. 22 at 10.

[157] *Id.* at 13 (citing *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008)).

[158] *Starns*, 524 F.3d at 614–15.

[159] *Id.*

[160] *Id.* at 617.

had informed the petitioner's trial counsel that the witness had contact with the victim before her death and the witness had stated that the victim was acting strangely.[161] The court stated that "28 U.S.C. § 2244 does not require 'the maximum feasible diligence' but only 'due, or reasonable diligence.'"[162] The Fifth Circuit concluded that the petitioner "did not fail to act with due diligence in not investigating further given the state's representations about the content, scope, and relevance of [the witness'] testimony."[163] The Fifth Circuit reasoned that "a petitioner's diligence must merely be due or reasonable under the circumstances," and "there was no requirement that [the petitioner] act diligently to investigate further assuming the state could be taken at its word."[164]

Petitioner also relies on the Tenth Circuit's decision in *Douglas v. Workman*.[165]  There, the Tenth Circuit held that the petitioner's *Brady* claim based on nondisclosure of an agreement between the prosecutor and the State's key witness was not barred by the statute of limitations because the petitioner, exercising due diligence, could not have discovered the claim any sooner considering the prosecutor's "active participation in shielding any evidence of the facts underlying the [*Brady*] claim."[166]

Petitioner contends that he satisfied the due diligence requirement by filing pre-trial motions requesting exculpatory evidence, and that he had the right to assume that the State's

---

[161] *Id.*

[162] *Id.* at 618 (quoting *Moore v. Knight*, 368 F.3d 936, 938 (7th Cir. 2004)).

[163] *Id.*

[164] *Id.*

[165] Rec. Doc. 22 at 13 (citing *Douglas v. Workman*, 560 F.3d 1156, 1181 (10th Cir. 2009)).

[166] *Douglas*, 560 F.3d at 1181.

disclosure was truthful and reliable.[167] Petitioner argues that performing a search of the records as contemplated by the Magistrate would have required him to contact every state criminal records custodian and the clerk of every federal district court, and that holding him to such a standard exceeds the due diligence requirement.[168] The Court finds this argument compelling. As in *Starns*, Petitioner's diligence was reasonable under the circumstances, and Petitioner was not required to investigate Price's prior convictions further because he relied on the State's representation that it had disclosed Price's prior convictions. Petitioner's counsel discovered Price's convictions for lying on a gun application and possession of a firearm by a convicted felon on or about October 22, 2009.[169] Therefore, the Court determines that October 22, 2009 was the date that the factual predicate of Petitioner's *Brady* claim could have been discovered through the exercise of due diligence. Accordingly, the federal habeas petition must have been filed no later than October 22, 2010, unless that deadline was extended through tolling.

The AEDPA provides for statutory tolling during "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."[170] Petitioner filed his application for post-conviction relief with the state trial court on December 13, 2009, tolling the statute of limitations.[171] At that time, the statute

---

[167] Rec. Doc. 22 at 14.

[168] *Id.* at 15.

[169] On October 20, 2009, Petitioner's counsel sent a letter to the First Judicial District Circuit Court of Harrison County, Mississippi, requesting a copy of Earl Price's convictions. State Rec., Vol. XII of XIII, Affidavit of Sheila C. Meyers, Apr. 22, 2010. The Clerk of Court mailed the requested documents to counsel on October 22, 2009. *Id.* The record does not reflect the date that counsel received the requested documents. Accordingly, the Court uses the October 22, 2009 date.

[170] 28 U.S.C. § 2255(d)(2).

[171] State Rec., Vol. XII of XIII, Application for Post-Conviction Relief, Dec. 13, 2009.

of limitations had run for 52 days. The statute of limitations remained tolled until January 18, 2013, when the Louisiana Supreme Court denied relief. [172] Petitioner filed his federal habeas petition in this Court on November 22, 2013, 308 days later.[173] Therefore, after accounting for statutory tolling, only 360 days of the limitations period had expired when Petitioner filed his federal habeas petition.[174] Accordingly, the Court rejects the Magistrate Judge's determination that Petitioner's *Brady* claim is untimely, and concludes that the *Brady* claim is timely under Subsection D because it was brought within one year of the date on which the factual predicate of the *Brady* claim could have been discovered through the exercise of due diligence, after accounting for statutory tolling.[175] Because the Court finds that Petitioner's *Brady* claim is timely, it turns to the merits of that claim.

**B.**      ***The Merits of Petitioner's Brady Claim***

     **1.**      **Standard of Merits Review Under AEDPA**

Following the enactment of AEDPA, the standard of review used to evaluate issues presented in habeas corpus petitions was revised "to ensure that state-court convictions are given effect to the extent possible under law."[176] For questions of fact, federal courts must defer to a state court's findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[177] A state court's determinations on mixed

---

[172] *State v. Reeder*, 2012-KP-1399 (La. 1/18/13), 107 So.3d 623; State Rec., Vol. XIII of XIII.

[173] Rec. Doc. 1.

[174] 52 + 308 = 360.

[175] 28 U.S.C. § 2244(d)(1)(D).

[176] *Bell v. Cone*, 535 U.S. 685, 693 (2002).

[177] 28 U.S.C. § 2254(d)(2).

questions of law and fact or pure issues of law, on the other hand, are to be upheld unless they are "contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[178]

> Regarding this standard, the U.S. Court of Appeals for the Fifth Circuit further explains:
>
> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state-court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.[179]

If Supreme Court case law "give[s] no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonably applied clearly established Federal law.'"[180] Additionally, "unreasonable is not the same as erroneous or incorrect; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."[181]

## 2. *Brady* Violation

Petitioner argues that the State committed a *Brady* violation when it withheld impeachment evidence that its witness, Earl Price, had prior federal convictions for lying on a gun application and possession of a firearm by a convicted felon.[182] In response, the State argues that the Louisiana

---

[178] 28 U.S.C. § 2254(d)(1).

[179] *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (internal citations and quotation marks omitted).

[180] *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

[181] *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) (internal quotation marks omitted).

[182] Rec. Doc. 1 at 17.

Fourth Circuit Court of Appeal's order denying Petitioner's *Brady* claim was not contrary to, nor an unreasonable application of, clearly established federal law.[183]

In *Brady v. Maryland*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." [184] The prosecutor's duty to provide favorable evidence includes impeachment evidence and exculpatory evidence.[185] The prosecutor's duty to disclose evidence includes both evidence in its own possession and any other "favorable evidence known to the others acting on the government's behalf in the case, including the police."[186]

To prevail on a *Brady* claim, Petitioner must show: (1) the prosecutor suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material to guilt or punishment.[187] "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[188] "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence,' or whether, 'after discounting the inculpatory evidence in light of the

---

[183] Rec. Doc. 16 at 27–28.

[184] 373 U.S. 83, 87 (1963).

[185] *United States v. Bagley*, 473 U.S. 667, 676 (1985).

[186] *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

[187] *Brady*, 405 U.S. at 154.

[188] *United States v. Bagley*, 473 U.S. 667, 682 (1985).

undisclosed evidence, there would not have been enough left to convict.'"[189] To succeed on a *Brady* claim, a defendant must "show[] that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."[190]

On federal habeas review, the Court does not decide *de novo* whether a state prisoner has sufficiently proven a *Brady* violation.[191] Instead, the Court must determine "whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law."[192] Therefore, on federal habeas review, a petitioner "must show that the prosecution's failure to disclose requested impeachment evidence constituted a violation of due process pursuant to *Brady*, and that the state court's application of Brady was unreasonable."[193]

Here, Petitioner asserts that the State violated *Brady* when it failed to disclose Price's prior federal convictions for lying on a gun application and possession of a firearm by a convicted felon.[194] The State admits that the first two prongs of *Brady* are met.[195] Therefore, the only remaining issue is the materiality of the undisclosed evidence. The Louisiana Fourth Circuit, the last state court to issue a written opinion on this issue, denied relief, finding that the defense was

---

[189] *Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).

[190] *Kyles*, 514 U.S. at 435.

[191] *Dickson v. Quarterman*, 462 F.3d 470, 474 (5th Cir. 2006) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)).

[192] *Id.* (quoting *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004)).

[193] *LaCaze v. Warden La. Corr. Inst. for Women*, 645 F.3d 728, 735 (5th Cir. 2011) (citing *Mahler v. Kaylo*, 537 F.3d 494, 499 (5th Cir. 2008)).

[194] Rec. Doc. 1 at 17.

[195] *See* Rec. Doc. 16 at 28–29, 36.

on notice of at least one of Price's federal convictions prior to the first trial and so the omission of

Price's other convictions did not "render the jury's verdict suspect."[196] On federal habeas review,

the Court must determine whether that decision was contrary to, or involved an unreasonable

application of, clearly established federal law.[197]

Petitioner relies on *Wearry v. Cain*, a recent Supreme Court decision holding that the

State's failure to disclose impeachment information concerning two state witnesses violated the

petitioner's due process rights.[198] In *Wearry*, the State withheld impeachment evidence concerning

two of the State's witnesses, Sam Scott and Eric Brown.[199] At trial, Scott was the only witness to

testify that he saw Wearry commit the homicide in question, and Eric Brown testified that on the

night of the murder he saw Wearry and other individuals with a man who looked like the victim.[200]

Wearry argued that the State withheld the following impeachment evidence: (1) police records

containing information that an inmate in the prison with Scott reported hearing Scott say he would

"make sure [Wearry] gets the needle cause he jacked over me;" (2) police records indicating that

Scott had tried to coerce another inmate to lie about witnessing the murder; (3) evidence that

Brown "had twice sought a deal to reduce his existing sentence in exchange for testifying against

Wearry;" and (4) medical records of the victim that could have contradicted Scott's testimony.[201]

On appeal, the Supreme Court concluded that "the newly discovered evidence suffice[d] to

---

[196] *State v. Reeder*, 2012-K-0529 (La. App. 4 Cir. 5/17/12); State Rec., Vol. XIII of XIII.

[197] *Dickson*, 462 F.3d at 474.

[198] 136 S. Ct. 1002 (2016).

[199] *Id.* at 1003.

[200] *Id.*

[201] *Id.* at 1004–05.

undermine confidence in Wearry's conviction."[202] The Supreme Court reasoned that "Scott's credibility . . . would have been further diminished had the jury learned that [the victim] may have been physically incapable of performing the role Scott ascribed to him, that Scott had coached another inmate to lie about the murder and thereby enhance his chances to get out of jail, or that Scott may have implicated Wearry to settle a personal score."[203]

Petitioner also relies on the Supreme Court's decision in *Smith v. Cain*.[204] There, the defendant was convicted of killing five people during an armed robbery, based on the testimony of a single witness, Larry Boatner, linking Smith to the crime.[205] On post-conviction relief, Smith argued that the State committed a *Brady* violation by failing to disclose police files containing statements by Boatner that he could not provide a description of the perpetrator.[206] The Supreme Court "observed that evidence impeaching an eyewitness may not be material if the State's other evidence is strong enough to sustain confidence in the verdict."[207] However, because Boatner's testimony was the only evidence linking Smith to the crime and the undisclosed statements directly contradicted that testimony, the Supreme Court found that the undisclosed statements were material under *Brady*.[208]

---

[202] *Id.* at 1006.

[203] *Id.* at 1006–07.

[204] 132 S. Ct. 627 (2012).

[205] *Id.* at 629.

[206] *Id.* at 630.

[207] *Id.*

[208] *Id.*

Petitioner argues that his case is similar to *Wearry* and *Smith* because the State withheld information about the credibility of its star witness and there was a lack of scientific or physical evidence linking Petitioner to the crime.[209] However, unlike in *Wearry* and *Smith*, Price's testimony was not the only evidence linking Petitioner to the crime. The State presented the testimony of Sergeant Westley Morris, who testified that both Price and Varist identified Petitioner as the shooter.[210] The State also presented the testimony of Broxton's mother, Mary Menina, who testified that she spoke with Norma Varist about the shooting, and based on the information Varist provided Menina believed that Petitioner killed Broxton.[211] Further, the State called Varist to the stand, and she was held in contempt for her refusal to testify.[212] An officer who arrested Petitioner testified that Varist told him she did not want to testify against Petitioner because of unspecified incidents that occurred between Varist's family and Petitioner's family.[213] Menina also testified that Varist was scared to testify at trial.[214] Although some of this evidence appears to be hearsay, the Court notes that no objection to the testimony was made at trial. Therefore, unlike in *Wearry* and *Smith*, there was some other evidence linking Petitioner to the crime.

Moreover, unlike in *Wearry* and *Smith*, the impeachment evidence that the State failed to disclose did not contradict Price's testimony that he witnessed Petitioner shoot Broxton. Instead, the impeachment evidence goes to Price's prior criminal history and a proclivity for truthfulness

---

[209] Rec. Doc. 1 at 27–28; Rec. Doc. 35 at 3–4.

[210] State Rec., Vol. IX of XIII, July 1995 Trial Transcript at 51.

[211] *Id.* at 8.

[212] *Id.* at 144–48.

[213] *Id.* at 155–59.

[214] *Id.* at 10.

in general. The Fifth Circuit addressed a similar issue in *Martin v. Cain*.[215] There, Martin was convicted of first degree murder in connection with aggravated rape.[216]  At trial, three inmates who were incarcerated with Martin testified that Martin told them he had engaged in sexual relations with the victim, but only one of the inmate's testimony, Marlin Sweet, established aggravated rape.[217] On post-conviction relief, Martin argued that the State failed to produce substantial impeachment evidence in violation of *Brady*, including Sweet's pre-trial video statement, his cell location history, and his criminal record.[218] During Martin's trial, Sweet testified that he only had one criminal conviction for cocaine distribution, when in fact his full criminal record included several prior convictions for theft, unauthorized use of a movable, and simple assault.[219] The state court denied relief on this issue and found that Martin had not established prejudice because the witness testified at trial in his prison uniform, the jury was aware that the witness had one prior felony conviction, and the jury knew that the witness was currently in prison.[220] Martin's federal habeas petition was denied by the district court, and the Fifth Circuit affirmed the denial of habeas relief.[221] The United States Supreme Court subsequently rejected the standard of review applied by the Fifth Circuit, and remanded the case for consideration of the appropriate standard of

---

[215] 246 F.3d 471, 480 (5th Cir. 2001).

[216] *Id.* at 473.

[217] *Id.* at 474.

[218] *Id.* at 477.

[219] *Id.*

[220] *Id.*

[221] *Id.* at 473 (citing *Martin v. Cain*, 206 F.3d 450, 461 (5th Cir. 2000)).

review.[222] On remand, the Fifth Circuit applied the appropriate standard and again affirmed the denial of habeas relief, concluding that the state court's decision was not contrary to, nor an unreasonable application of, federal law.[223] The Supreme Court denied the petitioner's related writ of certiorari.[224]

In Petitioner's case the State failed to disclose the full criminal record of its key witness, Earl Price. During Petitioner's trial, Price testified that he had a prior conviction for assault and battery and served time in prison.[225] Therefore, similar to *Martin*, the jury was aware that Price had at least one prior conviction. Moreover, although Petitioner's counsel was aware that Price had at least three other convictions,[226] he did not use this information to impeach Price's testimony.[227] The Louisiana Fourth Circuit found the omission of Price's other convictions did not "render the jury's verdict suspect" because the defense was on notice of at least one of Price's federal convictions prior to the first trial.[228] Because the jury was aware of one of Price's prior convictions and that Price had served time in prison, it was not an unreasonable application of federal law for the state court to conclude that there was not a reasonable probability that, had evidence of Price's additional convictions for lying on a gun application and possession of a

---

[222] *Id.* (citing *Martin v. Cain*, 531 U.S. 801 (2000)).

[223] *Id.* at 480.

[224] *Martin v. Cain*, 534 U.S. 885 (2001).

[225] State Rec., Vol. VI of XIII, July 1995 Trial Transcript at 100.

[226] State Rec., Vol. XII of XIII, Application for Post-Conviction Relief, at *7, Dec. 13, 2009. Prior to Petitioner's first trial, the State disclosed that Price had prior convictions for assault and battery in 1968, armed robbery in 1975, felon with a firearm in 1977 and burglary in 1982.

[227] State Rec., Vol. VI of XIII, July 1995 Trial Transcript at 100.

[228] *State v. Reeder*, 2012-K-0529 (La. App. 4 Cir. 5/17/12); State Rec., Vol. XIII of XIII.

firearm by a convicted felon been disclosed to the defense, the result of the proceeding would have been different.

Petitioner contends that this case is distinguishable because Price's prior conviction for lying on a gun application was not disclosed, and Petitioner argues that evidence of a conviction for lying is always material.[229] Petitioner asserts that the Ninth Circuit's decision in *United States v. Kohring* is instructive.[230] There, the Government withheld evidence of a witness's attempt to avoid prosecution for sexual exploitation of minors by soliciting perjury from one minor and by arranging for another minor to be unavailable to testify against him.[231] The Ninth Circuit concluded that the evidence was material because it "would have added an entirely new dimension to [the witness's] possible motives for cooperating with the government," and "would have probably had a substantial impact on the jury's assessment of [the witness's] character for truthfulness."[232]

The Fifth Circuit has also recognized that "where 'the jury's estimate of the truthfulness and reliability of [the witness] may well be determinative of guilt or innocence,' the failure to disclose *Brady* information is material."[233] However, "[t]he materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state."[234] "Undisclosed evidence that is merely cumulative of other evidence is not material, while the

---

[229] Rec. Doc. 1 at 28.

[230] *Id.* at 29 (citing 637 F.3d 895, 901 (9th Cir. 2010)).

[231] 637 F.3d at 903.

[232] *Id.* at 912.

[233] *LaCaze*, 645 F.3d at 738.

[234] *Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010) (internal citations omitted).

impeached testimony of a witness whose account is strongly corroborated by additional evidence supporting a guilty verdict . . . generally is not found to be material either."[235] "Evidence that impeaches an already thoroughly impeached witness is the definition of 'cumulative impeachment' evidence and its suppression cannot give rise to a *Brady* violation."[236]

In Petitioner's case, Price's account was corroborated by additional evidence. As discussed above, the State presented the testimony of Sergeant Westley Morris and Mary Menina, who both testified that Norma Varist provided them with information that Petitioner shot Broxton.[237] Price's testimony that Petitioner was wearing a blue and red windbreaker was also corroborated by Sergeant Morris and Officer Rodney McWilliams's testimony that another witness, Ella Fletcher, told the police that the shooter was wearing a blue and black jacket.[238] A jacket matching this description was also found near the scene.[239]

Moreover, Price was impeached by the defense. On cross examination, Price admitted to having a prior conviction in Mississippi for assault and battery with the intent to kill involving a shotgun, but he denied having any other criminal history.[240] Although the defense was aware that Price had at least three other prior convictions, defense counsel chose not to further impeach Price on this issue. Instead, defense counsel focused on inconsistencies in Price's testimony during the first and second trial. On cross examination, Price admitted that during the first trial he testified

---

[235] *Id.* at 396–97.

[236] *United States v. Sipe*, 388 F.3d 471, n.49 (5th Cir. 2004).

[237] State Rec., Vol. IX of XIII, July 1995 Trial Transcript at 8, 51. As noted above, although this evidence may have been hearsay, it was not objected to at trial.

[238] *Id.* at 28, 74–75.

[239] *Id.* at 28, 75.

[240] *Id.* at 100.

that he could not remember how the assailant arrived at the scene,[241] which contradicted his trial testimony during the second trial that the shooter arrived at the scene in a black Camaro with chrome wheels.[242] Price also admitted that on the day of the shooting he did not tell the police that Petitioner arrived at the scene in a car.[243] Although the undisclosed evidence would have further supported the defense's theory that Price had a propensity to lie in general, the undisclosed evidence does not show why Price would have any motivation to lie in this case. Therefore, the undisclosed evidence is cumulative because it impeaches an already thoroughly impeached witness, whose criminal history and inconsistent prior testimony was presented to the jury. Accordingly, Petitioner is not entitled to habeas relief because the state court's determination that the undisclosed evidence is not material was not contrary to, or an unreasonable application of, clearly established federal law.

## V. Conclusion

Based on the foregoing, the Court adopts the Report and Recommendation to the extent it recommends dismissal of Petitioner's *Napue* claim as untimely. The Court sustains Petitioner's objection regarding the timeliness of his *Brady* claim, and dismisses the *Brady* claim with prejudice on the merits. Accordingly,

**IT IS HEREBY ORDERED** that Court **ADOPTS** the Magistrate Judge's recommendation regarding the timeliness of Petitioner's *Napue* claim;

---

[241] *Id.* at 113–14.

[242] *Id.* at 92.

[243] *Id.* at 107–09, 112–13.

**IT IS FURTHER ORDERED** that Petitioner's *Napue* claim is **DISMISSED WITH PREJUDICE** as untimely filed;

**IT IS FURTHER ORDERED** that the Court **REJECTS** the Magistrate Judge's recommendation regarding the timeliness of Petitioner's *Brady* claim;

**IT IS FURTHER ORDERED** that Petitioner's *Brady* claim is **DISMISSED WITH PREJUDICE** on the merits.

**NEW ORLEANS, LOUISIANA,** this ___21st___ day of March, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**